UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MIRELA HINTERMAIER,

                Plaintiff,

-against-

HANDS OF HOPE PHYSICAL THERAPY & WELLNESS; EQUINOX HOLDINGS, INC.; UNITED HEALTHCARE COMMUNITY PLAN,

                Defendants.

1:24-CV-8914 (LTS)

ORDER TO AMEND

---

LAURA TAYLOR SWAIN, Chief United States District Judge:

    Plaintiff Mirela Hintermaier, who appears *pro se*, filed this action asserting claims of violations of: (1) Section 1557 of the Affordable Care Act ("ACA"), 42 U.S.C. § 18116; (2) Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d; (3) the Medicaid Act and the Social Security Act, 42 U.S.C. § 1396a, *et seq.*, including subsection (a)(8); (4) the Civil Rights Act of 1991, which the Court understands to be a reference to 42 U.S.C. § 1981; and (5) the New York State Human Rights Law ("NYSHRL"). She also asserts additional claims under state law, including claims of intentional infliction of emotional distress. Plaintiff sues: (1) Hands of Hope Physical Therapy & Wellness ("Hands of Hope"); (2) Equinox Holdings, Inc. ("Equinox"); and (3) United Healthcare Community Plan ("UH"). She seeks damages, injunctive relief, and declaratory relief.

    On December 9, 2024, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis* ("IFP"). For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within 60 days of the date of this order.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* at 678. But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine

whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

Plaintiff alleges the following: Plaintiff receives federally funded Medicaid health insurance coverage through UH. On August 1, 2024, at an Equinox gym located in New York, New York, at which Hands of Hope rented space and equipment from Equinox in order to provide physical therapy services, Hands of Hope denied Plaintiff those services, which were medically necessary. Hands of Hope falsely claimed that it was "no longer in-network" as to health insurance coverage by UH. (ECF 1, at 10.) This "denial of services and substandard treatment were motivated, in part, by discrimination based on Plaintiff's Medicaid status, falsely implying that Medicaid coverage was inferior or unreliable." (*Id.*) Plaintiff then communicated with UH, "which confirmed that Hands of Hope was in-network, and [that Plaintiff's] Medicaid coverage was active." (*Id.*) Yet, "[d]espite this confirmation, the office [*sic*] persisted in denying treatment until Plaintiff explicitly accused them [*sic*] of discriminatory practices." (*Id.*)

Hands of Hope then retaliated against Plaintiff by: (1) "[r]educing Plaintiff's treatment time without justification"; (2) "[r]educing Plaintiff's access to gym equipment necessary for therapy"; and (3) "[i]mposing administrative burdens such as requiring text-based scheduling." (*Id.*) Equinox, as Hands of Hope's landlord, "collaborated in enforcing these retaliatory restrictions, despite its own policy allowing physical therapy clients to use gym equipment under [a] therapist['s] supervision." (*Id.* at 11.) "Plaintiff witnessed other [Hands of Hope] clients being granted unrestricted access to gym facilities underscoring the discriminatory nature of the restrictions imposed on her." (*Id.*)

UH "failed to advocate for Plaintiff," in that it: (1) "[r]efus[ed] to provide written confirmation of Hands of Hope's in-network status"; (2) "[d]ismiss[ed] the denial as a 'simple

3

error' despite evidence of intentional misconduct"; and (3) "[i]gnor[ed] Plaintiff's request for managerial escalation." (*Id.*)

Plaintiff alleges that the defendants "discriminated against [her] on the basis of her Medicaid status, race, and national origin by denying medically necessary treatment, imposing retaliatory measures, and providing substandard care." (*Id.* at 6.) Plaintiff does not identify her race or national origin.

## DISCUSSION

**A.    Claims under the Medicaid Act and the Social Security Act**

To the extent that Plaintiff asserts claims of discrimination, including any based on her Medicaid status, and claims of retaliation, against any of the defendants, under either the Medicaid Act or the Social Security Act, the Court construes such claims as brought under 42 U.S.C. § 1983. *See Blessing v. Freestone*, 520 US. 329 (1997); *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 520-24 (1990).

A claim for relief under Section 1983 must allege facts showing that a defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor."[1] *West v. Atkins*, 487 U.S. 42, 48-49 (1988); *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) ("State action [for the purpose of Section 1983 liability] requires *both* . . . the exercise of some right or privilege

---

[1] Medicaid is a federal program administered by the States and, within the State of New York, the New York State Department of Health is the state agency responsible for its administration. *See* N.Y. Soc. Serv. Law § 363-a; *Shakhnes v. Berlin*, 689 F.3d 244, 247-48 (2d Cir. 2012).

created by the State . . . *and* the involvement of a person who may fairly be said to be a state actor." (internal quotation marks and citation omitted, emphasis in original)). Private entities are not generally considered to be state actors. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties. . . ." (internal quotation marks and citations omitted)).

The activity of a private entity may be considered to be state action for the purpose of Section 1983 liability, however, in the following three situations: (1) when the entity acts using the coercive power of the State or is controlled by the State (the "compulsion test"); (2) when the State provides significant encouragement to the entity, the entity willfully participates in joint activity with the State, or the entity's functions are entwined with State policies (the "joint action" or "close nexus" test); or (3) when the State has delegated a public function to the entity (the "public function" test). *See Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (citation omitted).

The fundamental question under each test is whether the private entity's challenged actions are "'fairly attributable'" to the State. *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)). In analyzing whether a private entity has acted as a state actor for the purpose of Section 1983 liability, a court must first "identify[ ] the specific conduct of which the plaintiff complains, rather than consider the general characteristics of the entity." *Id.* (internal quotation marks and citation omitted). The fact that an entity receives public funds does not turn private action into state action, and acts of private contractors do not become acts of the government because of the contractors' engagement in government contracts. *See Rendell-Baker*, 457 U.S. at

5

840-41. Furthermore, a private entity does not become a state actor merely by acting in accordance with state regulations. *See id.* at 841. Thus, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).

Plaintiff has alleged no facts showing that the defendants, which are all private entities, acted as state actors when they allegedly violated her federally protected rights. *See Roberts v. Healthfirst*, No. 24-CV-1556, 2024 WL 1413032, at *2 (E.D.N.Y. Apr. 2, 2024) ("Defendant is a . . . private health insurer that contracts with the State of New York to offer health coverage for Medicaid-eligible individuals. . . . A defendant's affiliation with Medicaid programs does not make that defendant a state actor."), *appeal dismissed*, No. 24-1617 (2d Cir. Aug. 5, 2024) (appeal dismissed effective Aug. 26, 2024); *Houston v. Highland Care Ctr., Inc.*, NO. 23-CV-8186, 2024 WL 638721, at *2 (E.D.N.Y. Jan. 26, 2024) ("The defendant is not a state actor simply because it participated in Medicare and Medicaid programs."), *appeal dismissed as frivolous*, No. 24-375, 2024 WL 3574275 (2d Cir. July 12, 2024), *cert. denied*, No. 24-5165, 2024 WL 4427400 (Oct. 7, 2024); *Rzayeva v. United States*, 492 F. Supp. 2d 60, 80 (D. Conn. 2007) ("Plaintiffs have not alleged that [the] private health care provider defendants . . . are state agencies, nor that they may be treated as state actors. . . . [A] private provider's acceptance of Medicare or Medicaid does not create the necessary nexus to support a § 1983 claim."). The Court therefore dismisses Plaintiff's claims under Section 1983 against the defendants for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.    Claims of discrimination under the ACA**

Plaintiff must amend her complaint with respect to her claims of discrimination under Section 1557 of the ACA, 42 U.S.C. § 18116. This statutory provision states, in pertinent part, that:

6

> [e]xcept as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d *et seq.*), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 *et seq.*) [("Title IX")], the Age Discrimination Act of 1975 (42 U.S.C. 6101 *et seq.*) [("the ADEA")], or section 794 of Title 29 [("the Rehabilitation Act")], be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section 794, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

42 U.S.C. § 18116(a).

Thus, this provision "prohibits discrimination and the denial of benefits on the basis of race, color, national origin, sex, age, or disability 'under any health program or activity, any part of which is receiving Federal financial assistance.'" *Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 520 (S.D.N.Y. 2018) (citation omitted). It "expressly incorporates four federal civil rights statutes that provide the protected grounds of discrimination and accompanying burdens of proof: race, color, and national origin (under Title VI); sex (under Title IX); age (under the ADEA), and disability (under the Rehabilitation [A]ct)." *Id.* Accordingly, to state a claim under this statutory provision, "a [p]laintiff suing a [d]efendant for discriminating in the denial of benefits under the ACA must essentially plead a corresponding civil rights statute predicate." *Id.* Because Plaintiff alleges discrimination based on her race and national origin, the relevant statute here would be Title VI. *See Bloomberg v. N.Y.C. Dep't of Educ.*, 119 F.4th 209, 214 (2d Cir. 2024) ("[W]e now hold that Title VI authorizes an implied private right of action to enforce [its] prohibition on intentional discrimination based on race, color, or national origin[,] [codified at (42 U.S.C. § 2000d)].").

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to

7

discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To state a claim under Title VI, a plaintiff must allege that (1) the defendant discriminated against her on the basis of race, color, or national origin; (2) the discrimination was intentional; and (3) the discrimination was a substantial and motivating factor for the defendant's actions. *See Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001). In addition, a defendant's "[r]eceipt of federal funds is a required element of every Title VI claim." *Joy v. Crime Victims Treatment Ctr. (CVTV)*, No. 1:23-CV-11177 (MMG), 2025 WL 326521, at *7 (S.D.N.Y. Jan. 29, 2025).

Plaintiff seems to allege that UH, as her health insurance carrier, receives federal Medicaid funds because of its participation in a Medicaid program that it administers. She also seems to allege that Hands of Hope, as a UH "in-network" provider of physical therapy services, receives federal Medicaid funds via UH, and that such funds pay for her medically necessary physical therapy. Plaintiff does not allege, however, that Equinox, Hands of Hope's landlord with regard to the space and equipment with which Hands of Hope provides clients, including Plaintiff, with physical therapy services, receives federal funds. Yet, even if the Court were to assume, for the purposes of this order, that all of the defendants receive federal funds, Plaintiff has alleged no facts showing how she was discriminated against by the defendants on the basis of any of the classes protected by Title VI (race, color, or national origin) with regard to her participation in, being denied the benefits of, or being subjected to discrimination under any program or activity of any of the defendants' that receives federal funds. She also alleges nothing to suggest that any such discrimination was intentional, and she provides no factual basis to support the contention that such discrimination (based on race, color, or national origin) was a substantial and motivating factor for the defendants' alleged actions. She merely states, without

8

any factual support, that the defendants "discriminated against [her] on the basis of her Medicaid status, race, and national origin by denying medically necessary treatment, imposing retaliatory measures, and providing substandard care."[2] (ECF 1, at 6.) The Court therefore dismisses these claims for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to replead these claims in an amended complaint in which she allege facts sufficient to state such a claim.

C.  **Claims of retaliation under the ACA and/or Title VI**

The Court understands that Plaintiff may also be asserting claims of retaliation under Title VI (on its own and/or as incorporated by reference in Section 1557 of the ACA, 42 U.S.C. § 18116(a)). "Title VI forbids a recipient of federal funds from retaliating against one who complains about discriminatory conduct prohibited *by [Title VI]*." *Bloomberg*, 119 F.4th at 214 (emphasis added). To state such a claim, a plaintiff "must allege that she engaged in protected activity, the [the defendant] knew about her protected activity, she suffered an adverse action, and there was 'a causal connection between the protected activity and the adverse action.'"[3] *Id.* at 215 (citation omitted). The plaintiff must also allege that the program or activity at issue receives federal funds, but she need not allege a nexus between those funds and the retaliation. *Id.*

---

[2] Medicaid status, by itself, is not a class protected under Title VI, nor is that status, by itself, a protected class under any of the other antidiscrimination statutory provisions incorporated by reference in Section 1557 of the ACA. *See* § 18116(a); *Weinreb*, 323 F. Supp. 3d at 520.

[3] To the extent that Plaintiff asserts such claims of retaliation under Title VI, as incorporated by reference in Section 1557 of the ACA (42 U.S.C. § 18116(a)), the Court examines such claims using the pleading standard for claims of retaliation under Title VI itself. *See Weinreb*, 323 F. Supp. 3d at 520.

9

The Court shares the same concerns here, as it did above, with regard to whether all of the defendants are recipients of federal funds. Yet, assuming, for the purposes of this order, that they all are recipients of federal funds, Plaintiff still does not allege facts sufficient to state a claim of retaliation under Title VI (including any such claims as incorporated by reference in Section 1557 of the ACA, 42 U.S.C. § 18116(a)). This is because, even also assuming, for the purposes of this order, that there was a causal connection between Plaintiff's purported protected activity and the defendants' alleged adverse actions taken against her, Plaintiff does not allege facts sufficient to show that: (1) she was actually engaged in protected activity, and (2) the defendants knew about that protected activity.

In the Title VI context, courts have held that a plaintiff shows that she has engaged in protected activity when she alleges facts demonstrating "a good faith, reasonable belief that [s]he was opposing a[] . . . practice made *unlawful by Title VI*." *Rafi v. Yale Univ. Sch. of Med.*, No. 3:14-CV-1582, 2017 WL 3205548, at *11 (D. Conn. July 27, 2017) (quoting *Morales v. NYS Dep't of Labor*, 865 F. Supp. 2d 220, 252 (N.D.N.Y. 2012), *aff'd sub nom. Morales v. N.Y. State Dep't of Labor, Div. of Emp't Servs.*, 530 F. App'x 13 (2d Cir. 2013) (summary order) (internal quotation marks omitted, emphasis added)), *appeal dismissed as frivolous*, No. 17-2754, 2018 WL 11337208 (2d Cir. Mar. 9, 2018); *see Verdi v. City of New York*, 306 F. Supp. 3d 532, 543 n.8 (S.D.N.Y. 2018) (same); *see also Bloomberg*, 119 F.4th at 214 ("Title VI forbids a recipient of federal funds from retaliating against one who complains about discriminatory conduct prohibited by *the statute*. . . . Title VI provides a cause of action for retaliation based upon opposition *to practices that Title VI forbids*." (internal quotation marks and citation omitted, emphasis added)).

Plaintiff does not show that she engaged in protected activity because she does not allege facts showing that she opposed discrimination prohibited by Title VI – discrimination based on race, color, or national origin. While it is clear that Plaintiff alleges that she opposed a defendant's (Hands of Hope's) alleged discrimination against her when she complained to that defendant, and perhaps, other defendants about the discrimination that she perceived, Plaintiff seems to allege that the discrimination of which she complained was based on her Medicaid status (*see* ECF 1, at 5, 10-11), and not based on her race, color, or national origin – the only classes that are protected from discrimination under Title VI, *see* § 2000d. As the Court mentioned above, Medicaid status is not a class protected under Title VI. *Supra* note 2. In addition, because Plaintiff does not show that she was engaging in protected activity, she does not show that the defendants knew that she was engaging in protected activity. The Court therefore dismisses these claims for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to replead these claims in an amended complaint in which she alleges facts sufficient to state such a claim.

**D.      Claims of discrimination under 42 U.S.C. § 1981**

To the extent that Plaintiff asserts claims of discrimination against the defendants arising from a private prospective or actual contractual relationship, the Court construes Plaintiff's complaint asserting claims of discrimination under 42 U.S.C. § 1981. Section 1981 prohibits discrimination in, among other contexts, the contractual relationship context, "on account of [a person's] race, ancestry, or ethnic characteristics."[4] *Zemsky v. City of New York*, 821 F.2d 148,

---

[4] "Specifically, Section 1981 provides that '[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens.'" *Ofori-Tenkorang v. Am. Int'l Grp., Inc.*, 460 F.3d 296, 300 (2d Cir. 2006) (quoting 42 U.S.C. § 1981(a)). "Subsection (c) [of Section 1981] explicitly applies . . . to private discrimination and subsection (b) explicitly asserts that the term make and enforce contracts includes the making, performance, modification, and termination of

150 (2d Cir. 1987). To state a claim of discrimination under Section 1981, a plaintiff must allege facts showing: "(1) [the] plaintiff[] [is a] member[] of a racial minority; (2) [the] defendant['s] intent to discriminate on the basis of race[,] [ancestry, or ethnic characteristics]; and (3) discrimination concerning one of the statute's enumerated activities." *Brown v. City of Oneonta,* 221 F.3d 329, 339 (2d Cir. 2000). "[A] plaintiff must . . . plead . . . that, but for race [or one of the other classes protected by Section 1981], [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 341 (2020). "Accordingly, [for a claim of discrimination under Section 1981,] it is insufficient to merely plead that race [or one of the other classes protected by Section 1981] was a motivating factor in the discriminatory action." *Brown v. Montefiore Med. Ctr.*, No. 19-CV-11474 (ALC), 2021 WL 1163797, at *5 (S.D.N.Y. Mar. 25, 2021) (citing *Comcast Corp.*, 589 U.S. at 336-39).

While Plaintiff may have alleged facts showing that at least one of the defendants (Hands of Hope) discriminated against her with regard to a contractual relationship she had or was attempting to have with it, she does not allege that she is a member of a racial minority; Plaintiff does not identify the racial group(s) of which she is a member. She also does not allege any facts suggesting that any of the defendants intentionally discriminated against her because of her race, ancestry, or ethnic characteristics; specifically, that but for her membership in any of those protected classes, none of the defendants would have discriminated against her with regard to her actual or prospective contractual relationship with them. As with the ACA and Title VI, Medicaid

---

contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." *Id.* at 301 (quoting § 1981(b) (internal quotation marks omitted)). The protections of Section 1981 apply to all contracts. *See Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 304 (1994).

status is not a class protected under Section 1981. *See* § 1981(a); *Zemsky*, 821 F.2d at 150. The Court therefore dismisses these claims for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). The Court grants Plaintiff leave to replead these claims in an amended complaint in which she allege facts that state a claim of discrimination under Section 1981.

E.     **Claims of retaliation under Section 1981**

Plaintiff also fails to state a claim of retaliation under Section 1981. To state such a claim, a plaintiff must allege facts showing that the plaintiff engaged in an activity protected *under Section 1981*, (2) the defendants were aware of the plaintiff's participation in the protected activity, (3) the defendants took adverse action against the plaintiff based upon that activity, and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by defendants. *See Lizardo v. Denny's, Inc.*, 270 F.3d 94, 105 (2d Cir. 2001). Plaintiff's allegations with respect to her claims of retaliation under Section 1981 do not state such a claim for reasons similar to, if not the same as, the Court's reasons stated above with respect to her claims of retaliation under Title VI. Plaintiff seems to allege that the discrimination that she complained to at least one of the defendants about was discrimination against her based on her Medicaid status (*see* ECF 1, at 5, 10-11), and not based on her race, ancestry, or ethnic characteristics – the only classes that are protected from discrimination under Section 1981. *See* § 1981(a); *Zemsky*, 821 F.2d at 150. As stated above, Medicaid status is not a class protected under Section 1981. *See supra* at 12-13. Similarly, because Plaintiff does not show that she was engaging in protected activity, she does not show that the defendants knew that she was engaging in protected activity. The Court therefore also dismisses these claims for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to replead these claims in an amended complaint in which she alleges facts sufficient to state such a claim.

**LEAVE TO AMEND**

Plaintiff proceeds in this matter without the benefit of an attorney. Federal district courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the United States Court of Appeals for the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claim of discrimination under the ACA, Title VI, and/or Section 1981, or a valid claim of retaliation under any of those statutes, the Court grants Plaintiff 60 days' leave to amend her complaint to detail her claims.

Plaintiff is granted leave to amend her complaint to provide more facts about her claims, as specified above. In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, she must provide it. Plaintiff should include all of the information in the amended complaint that she wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

a) the names and titles of all relevant people;

b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

    d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated her federally protected rights; how, when, and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint. Plaintiff should not raise in her amended complaint any claims that were dismissed in this order that the Court did not grant Plaintiff leave to replead.

## CONCLUSION

The Court grants Plaintiff leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this court's *Pro Se* Intake Unit within 60 days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 1:24-CV-8914 (LTS). An amended complaint form is attached to this order. No summonses will issue at this time. If Plaintiff fails to comply within the time allowed, and she cannot show good cause to excuse such failure, the Court will dismiss this action. The Court will dismiss Plaintiff's claims under federal law for failure to state a claim on which relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), and will decline to consider, under its supplemental jurisdiction, Plaintiff's claims under state law, including her claims under the NYSHRL, *see* 28 U.S.C. § 1367(c)(3).

The Court grants Plaintiff's motion for permission for electronic case filing. (ECF 6.)

Because of the abovementioned deficiencies in Plaintiff's complaint, the Court denies Plaintiff's motion to expedite proceedings. (ECF 8.)

The City Bar Justice Center ("CBJC") operates the SDNY Federal Pro Se Legal Assistance Project to assist self-represented parties with civil cases in this court. Appointments can be scheduled by phone (212-382-4794), email ([fedprosdny@nycbar.org](mailto:fedprosdny@nycbar.org)), or by completing the CBJC's [intake form](). The CBJC is a private organization that it not part of the court, and the CBJC's SDNY Federal Pro Se Legal Assistance Project cannot accept filings on behalf of the court. A flyer with details is attached.

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:   February 4, 2025
         New York, New York

                                          /s/ Laura Taylor Swain
                                          LAURA TAYLOR SWAIN
                                          Chief United States District Judge